616 So.2d 501 (1993)
Melvina Lorraine WOODARD, Appellant,
v.
SUNBEAM TELEVISION CORPORATION, d/b/a WSVN-Channel 7, a/k/a Channel 7 and Jon Steinberg, Appellees.
No. 91-2230.
District Court of Appeal of Florida, Third District.
March 16, 1993.
*502 Ronald J. Maniloff, Miami, for appellant.
Milledge & Iden, Allan Milledge, Gary M. Held and Dana J. McElroy, Miami, for appellees.
Before FERGUSON, COPE and GODERICH, JJ.
GODERICH, Judge.
The plaintiff, Melvina Lorraine Woodard, appeals from a final summary judgment entered in favor of the defendants, Sunbeam Television Corporation and Jon Steinberg. We affirm.
On February 19, 1990, the defendants broadcast on various news programs that Woodard "served four years in jail for murder when using the name Melvina Lorraine Johnson." In fact, Woodard was convicted in 1972 of attempted murder and was sentenced to four years in jail, but served about two years.
Woodard, a Dade County School bus driver, sued Jon Steinberg, an investigative reporter, and Sunbeam Television Corporation, his employer and the licensee of Channel 7, for defamation and invasion of privacy, over the statements made about her in an investigative series entitled "Your Kids On Board." Steinberg defended the action arguing that he had obtained the information for the series from a report he obtained from the Florida Department of Law Enforcement [FDLE]. The FDLE report stated that Woodard had been convicted of "homicide  willful kill" and had received a four year sentence which was to commence on March 2, 1972. The report also stated that Woodard was paroled on April 8, 1974.
The trial court granted the defendants' motion for summary judgment as to all counts, finding no genuine issue as to any material fact. Woodard appealed.
Woodard contends that the trial court erred in granting the defendants' motion for summary judgment where a genuine issue of material fact existed as to whether the defendants abused the common law qualified privilege recognized as the fair reporting privilege where they negligently relied on information from the FDLE document and where they broadcast inaccurate information. We disagree.
There is no liability for the publication of defamatory matter "if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused." Nodar v. Galbreath, 462 So.2d 803, 809 (Fla. 1984) (quoting Restatement (Second) of Torts § 593 (1976)). Moreover, "[i]f the report of a public official proceeding is accurate or a fair abridgement, an action cannot constitutionally be maintained, either for defamation or for invasion of the right of privacy." Restatement (Second) of Torts § 611, cmt. b (1977).
The news media has been given a qualified privilege to accurately report on the information they receive from government officials. Ortega v. Post-Newsweek Stations, Fla., Inc., 510 So.2d 972 (Fla. 3d DCA), rev. denied, 518 So.2d 1277 (Fla. 1987). This privilege includes the broadcast "of the contents of an official document, so long as their account is reasonably accurate and fair", Ortega, 510 So.2d at 976 (quoting Lavin v. New York News, Inc., 757 F.2d 1416, 1420 (3d Cir.1985)), even if the official documents contain erroneous information. Id.
In the instant case, Steinberg obtained his information on Woodard from what he was told by the Attorney General's Office and what the FDLE report revealed. The defendants have established that the story was a republication of information provided by law enforcement authorities. Thus, the information came from official documents.
Moreover, Steinberg's report was fair and accurate because it conveyed to the viewers a substantially correct account of the FDLE report; Steinberg's report told viewers that Woodard had a criminal record and was employed as a school bus driver. See Restatement (Second) of Torts *503 § 611, cmt. f (1977) ("It is not necessary that it be exact in every immaterial detail or that it conform to the precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings."). Steinberg accurately reported what was stated in the FDLE report, which was that Woodard had been convicted of homicide, the killing of another person. The fact that she actually spent two years in prison, as opposed to the four years reported by Steinberg, would not have had a different effect on the mind of the viewer since this fact does not affect the gist of the story.
Finally, Steinberg had no duty to determine the accuracy of the information contained in the FDLE records before broadcasting it in his report. See Ortega, 510 So.2d at 976. Therefore, he did not abuse the privilege.
In summary, we find that the broadcast was a republication of the information obtained from official sources which was accurate and fair and the fair reporting privilege was not abused. Accordingly, the trial court properly granted the defendants' motion for summary judgment on the defamation claims.
Next, Woodard contends that the trial court erred in granting the defendants' motion for summary judgment where a genuine issue of material fact existed as to whether the defendants invaded her right to privacy by intruding into her solitude. We disagree.
The elements for the tort of invasion of privacy by the disclosure of private facts are the following: "1) the publication, 2) of private facts, 3) that are offensive, and 4) are not of public concern." Cape Publications, Inc. v. Hitchner, 549 So.2d 1374, 1377 (Fla.), appeal dismissed, 493 U.S. 929, 110 S.Ct. 296, 107 L.Ed.2d 276 (1989). The right of privacy does not protect against publication of public records and matters of legitimate public interest. Cox Broadcasting v. Cohn, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); Cape Publications, 549 So.2d at 1374.
In the instant case, Woodard accuses Steinberg of invading her privacy by asking her during his investigation when she stopped using the name Johnson and by identifying her in a subtitle during the broadcast as "Melvina Lorraine Johnson a/k/a Melvina Lorraine Woodard." Woodard herself told Steinberg that she changed her name when she got divorced. Therefore, the fact that she changed her name is a matter of public record. See Barron v. Florida Newspapers, Inc., 531 So.2d 113 (Fla. 1988) (In Florida, all court proceedings are public events and have common law right of access to court proceedings and records.) Moreover, her conviction and sentence are also a matter of public record. Woodard is, therefore, unable to prove that the facts broadcast are private facts.
Additionally, the publication of private facts is not an invasion of privacy where these facts are also of public concern. Cape Publications, 549 So.2d at 1374. In the instant case, Steinberg's investigation was commenced after the legislature passed a statute requiring the school boards to conduct background check on all new hires, but did not address existing employees. Steinberg received FDLE reports revealing that many school bus drivers had committed felonies and misdemeanors. The public had a right to know that many school bus drivers had criminal records. Therefore, the plaintiff is also unable to prove that the matters broadcast are not of public concern. For the foregoing reasons, we find that the trial court properly granted summary judgment on Woodard's invasion of privacy claims.
Affirmed.