# Third District Court of Appeal

## State of Florida

Opinion filed March 16, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-964
Lower Tribunal No. 20-10501
_____

**Jaclyn Swedberg,**
Appellant,

vs.

**Goldfinger's South, Inc., d/b/a Showgirls, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

The Casas Law Firm, P.C., and Ludmila Khomiak, for appellant.

Joseph J. Portuondo, for appellee.

Before EMAS, LOGUE, and MILLER, JJ.

LOGUE, J.

Jaclyn Swedberg appeals the trial court's order dismissing her complaint as barred by the applicable four-year statute of limitations. Ms.

Swedberg sued Goldfinger's South, Inc. d/b/a Showgirls Inc., an adult entertainment club, in 2019 for misappropriating her likeness. She alleged Showgirls posted two advertisements on Facebook using her image. The two advertisements were identical with the same format, words, and picture of her. One was posted in 2015 to promote the Club's 2015 Cinco de Mayo event and the other was posted in 2016 to promote the Club's 2016 Cinco de Mayo event. The first was posted more than four years before the filing of the complaint. The second was posted less than four years before the filing of the complaint.

The question presented is whether the identical Facebook posts published at different times to promote different events constitute a single publication under section 770.07, Florida Statutes (2016). The trial court held that they did and therefore the statute of limitations expired because it began to run from the first posting. For the reasons explained below, we hold that the two posts, although identical, do not constitute a single publication and reverse.

**Factual and Procedural Background**

On May 15, 2020, Ms. Swedberg filed the instant action alleging violation of section 540.08, Florida Statutes, for the unauthorized publication of name/likeness (Count I); violation of common law right of publicity (Count

2

II); conversion (Count III); and unjust enrichment (Count IV). The complaint alleged that Showgirls had published Ms. Swedberg's likeness without her permission to market its business interests on social media accounts.

Ms. Swedberg attached to her complaint two advertisements posted by Showgirls to the Club's Facebook account. The two advertisements used the identical text, photograph, and format. The first advertisement was posted on Showgirls' Facebook account on April 11, 2015 to promote Showgirls' 2015 Cinco de Mayo party. The second advertisement was posted on May 4, 2016 to promote Showgirls' 2016 Cinco de Mayo party.

Showgirls moved to dismiss the complaint asserting that Ms. Swedberg's action was barred by the four-year statute of limitations by virtue of the single publication rule. Showgirls asserted that because the publications were of a single, unmodified image, Ms. Swedberg's cause of action accrued when the image was first published on April 11, 2015 and expired four years later on April 11, 2019. Showgirls asserted that the statute of limitations did not restart because the original image was neither modified nor presented in a different format.

Ms. Swedberg countered that the second posting of her image constituted a separate publication in which Showgirls consciously decided to republish the image, and therefore the single publication rule did not apply.

3

The trial court agreed with Showgirls and dismissed the action. This appeal timely followed.

### Discussion

We review a trial court's order granting a motion to dismiss de novo. Nationstar Mortg., LLC v. Sunderman, 201 So. 3d 139, 140 (Fla. 3d DCA 2015). Moreover, "[a] legal issue surrounding a statute of limitations question is an issue of law subject to de novo review." Fox v. Madsen, 12 So. 3d 1261, 1262 (Fla. 4th DCA 2009) (quoting Hamilton v. Tanner, 962 So. 2d 997, 1000 (Fla. 2d DCA 2007)). While the statute of limitations is generally an affirmative defense, "a party can raise a statute of limitations defense in a motion to dismiss if that defense appears on the face of the complaint." Sunderman, 201 So. 3d at 140; see also Fla. R. Civ. P. 1.110(d) ("Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b) . . . .").

The parties agree that the applicable statute of limitations is four years. They also agree that the first advertisement falls outside of the four-year limitations period. See Putnam Berkley Grp., Inc. v. Dinin, 734 So. 2d 532, 536 (Fla. 4th DCA 1999) (holding that actions based on a publication must be brought within four years of the date of publication, rather than within four years of "discovery of the fact of publication"). The issue on which the parties

4

disagree is whether the second advertisement should be considered as part of a "single publication" with the first advertisement pursuant to the single-publication rule.

The single publication rule provides that a "cause of action for damages founded upon a single publication or exhibition or utterance, as described in § 770.05, shall be deemed to have accrued at the time of the first publication or exhibition or utterance thereof in this state." § 770.07, Fla. Stat. Section 770.05 in turn refers to causes of action of "libel or slander, invasion of privacy, or any other tort founded upon any single publication, exhibition, or utterance, such as any one edition of a newspaper, book, or magazine, any one presentation to an audience, any one broadcast over radio or television, or any one exhibition of a motion picture."

The single publication rule developed out of the law of defamation and libel. At common law, each publication of a defamation or libel gave rise to a separate cause of action. With the advent of mass communication, however, obvious problems were presented by a rule of law that would view the sale of each copy of a newspaper or book as a separate tort. To correct these problems, courts began treating a single edition of a newspaper or book as a single publication. Under this approach, the wideness of the dissemination of a particular edition does not give rise to separate torts but goes instead to

5

the issue of damages. <u>See generally</u> <u>Firstamerica Dev. Corp. v. Daytona Beach News-J. Corp.</u>, 196 So. 2d 97, 101 (Fla. 1966).

Thus, the purpose of the single publication rule is to avoid continuous litigation following mass dissemination in the modern media. <u>See, e.g.</u>, <u>Musto v. Bell South Telecomms. Corp.</u>, 748 So. 2d 296, 298 (Fla. 1999) (noting the rationale underlying the single publication rule includes "avoiding a vast multiplicity of lawsuits that would result from defamatory statements contained in a mass publication such as a newspaper or magazine"); <u>Daytona Beach News–Journal Corp. v. Firstamerica Dev. Corp.</u>, 181 So. 2d 565, 568 n.1 (Fla. 3d DCA 1966) (noting that the single publication rule is "a convenient tool to express the rule that all causes of action for widely circulated libel must be litigated in one trial, and that each [publication] need not be separately pleaded and proven" (citation omitted)). <u>See also</u> <u>Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.</u>, 512 F.3d 137, 142 (5th Cir. 2007) (explaining that the "purpose of the single publication rule is to prevent plaintiffs from bringing stale and repetitive defamation claims against publishers").

The purpose is not to deprive an injured plaintiff of her right to bring suit, "but rather to protect the defendant—and the courts—from a multiplicity of suits, an almost endless tolling of the statute of limitations, and diversity

6

in applicable substantive law." Buckley v. New York Post Corp., 373 F.2d 175, 180 (2d Cir. 1967). This means that continued dissemination of a statement through the mass media will be treated as a single publication when the publisher "does not make a separate publishing decision as to each copy or small batch of copies." See Roberts v. McAfee, Inc., 660 F.3d 1156, 1169 (9th Cir. 2011).

Although the single publication rule developed out of defamation, the codified versions, including Florida's, extend the rule to "any other tort founded upon any single publication." § 770.05, Fla. Stat. This broad language includes misappropriation of a likeness for commercial purposes. Miller v. Anheuser Busch, Inc., 348 F. App'x 547, 550 (11th Cir. 2009) ("Florida applies the 'single publication rule' in misappropriation cases brought under Fla. Stat. § 540.08 . . . ."). See, e.g., Christoff v. Nestle USA, Inc., 213 P.3d 132, 137 (Ca. 2009) (interpreting similar language in California's codified single publication rule as including unauthorized commercial exploitation of a model's image).

Moreover, Florida's single publication rule applies to publication over the internet. Norkin v. The Fla. Bar, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018) (noting that "[e]very state court that has considered the question

applies the single-publication rule to information online." (quoting Pippen v. NBCUniversal Media, LLC, 734 F.3d 610, 615–16 (7th Cir. 2013))).

We conclude that Florida's single publication rule does not apply in a situation like the one before us. The allegations in the complaint indicate that Showgirls' second publication was not the continued dissemination of a single edition of a book, newspaper, or online article. Instead, it was the result of a second decision by the Club in 2016 to make a separate use of Ms. Swedberg's likeness to promote a different event at the Club. In Florida, a separate and distinct decision to publish even identical information does not fall within the ambit of the single publication rule.

We reach this conclusion through application of the Second District's decision in Baucom v. Haverty, 805 So. 2d 959, 960 (Fla. 2d DCA 2001). In that case, a personal injury plaintiff was referred to a medical group to prepare a medical assessment report to use for litigation. After the litigation was settled, the medical group used the report as an example of their work to market their services to various law firms. The group submitted the identical report to prospective clients, without making any changes. Nine years after the first use of the report, and well outside the applicable statute of limitations for that first publication, the original plaintiff sued the medical group for misappropriation of her name and likeness. The Second District

held that the single publication rule did not bar suit for the later publications of the identical report:

> Here, Baucom alleged multiple publications or disseminations. In other words, a new publication occurred each time the appellees presented the report to a new potential employer. <u>Consequently, each time the appellees presented the report to a new potential employer, the applicable four-year statute of limitations began to run anew.</u>

<u>Id.</u> (emphasis added).

Like the medical group in <u>Baucom</u>, Showgirls misappropriated Ms. Swedberg's likeness in separate advertisements. The second posting to Facebook was not simply an inadvertent and unconscious repetition of the original ad disseminated through modern media outlets.[1] To the contrary, the second posting was a conscious and separate decision to make a further commercial use of Ms. Swedberg's image to advertise a different event at the Club. This crucial fact is not changed merely because the second image itself was identical to the original image. <u>See</u> <u>Baucom</u>, 805 So. 2d at 960.

In this regard, we decline to follow <u>Zoll v. Jordache Enterprises, Inc.</u>, No. 01 Civ. 1339(CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002), which

---

[1] <u>See</u> <u>Brooks v. TVOne, LLC</u>, No. GJH-19-2315, 2020 WL 3833126 at *4 (D.Md. July 7, 2020). In that case, relied on by Showgirls, the court concluded that the single publication rule applied because the second publication constituted nothing more "than delayed circulation of the original edition."

9

we read as applying apparently unique New York privacy law to hold that a subsequent decision to republish must be combined with some modification or revision of the original publication to avoid application of the single publication rule. It does not appear that this ruling would extend beyond causes of action under New York privacy law. See Lehman v. Discovery Commc'ns, Inc., 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004) (applying New York defamation law to find "the rebroadcast of the television program constitutes a republication and therefore provides for a new cause of action and refreshes the statute of limitations."). In any event, in Florida, the application of the single publication rule turns on the question of whether a separate and distinct decision was made to republish the material. Any modification of the material might shed light on whether a separate decision to republish was made, but the absence of modification does not mechanically place a publication within the single publication rule. See Baucom, 805 So. 2d at 960.

Reversed and remanded.