ON MOTION FOR REHEARING
 

 LAMBERT, B.D., Associate Judge.
 

 We grant the motion for rehearing, withdraw our prior opinion, and substitute this opinion in its place.
 

 
 *786
 
 Singer timely appeals a final order dismissing his two-count amended complaint against the appellees, Unibilt Development Company (“Unibilt”), Williamsburg Developers Limited Partnership (“Williamsburg Developers”), Williamsburg-Biltmore, Inc. (“Biltmore”), and Williamsburg-Zlotoff, Inc. (“Zlotoff’)- The court dismissed the amended complaint for lack of personal jurisdiction and directed that Singer may pursue his claims in the state of Michigan, or such other forum state having personal jurisdiction where venue is proper.
 

 BACKGROUND
 

 Unibilt, Biltmore, and Zlotoff are Michigan corporations, and Williamsburg Developers is a Michigan limited partnership. Biltmore and Zlotoff are general partners of Williamsburg Developers. Unibilt developed and managed the Williamsburg Developers’ properties. Singer was the president of Unibilt from the 1980s until 2000. Singer was also a limited partner of Williamsburg Developers, holding a 12.1875% share.
 

 In 2000, Unibilt terminated Singer from employment. Singer sued the four appel-lees and their various partners in the Orange County Circuit Court. The parties settled the case, memorializing the terms of their settlement in a written Settlement Agreement and Mutual Release (“Settlement Agreement”). A voluntary dismissal with prejudice was thereafter entered.
 

 THE PRESENT CASE
 

 The genesis of the present ease was Singer’s belief that he did not receive his appropriate share of profits or distribution from the appellees after the sale of certain real property located in Orange County, Florida. To resolve his concerns, Singer filed an amended complaint against Uni-bilt, Williamsburg Developers, Biltmore, and Zlotoff. In Count I, Singer alleged that Unibilt breached the aforementioned Settlement Agreement. In Count II, Singer alleged that the other three appel-lees (collectively “the Williamsburg defendants”) breached their Partnership Agreement with him.
 

 The Williamsburg defendants each made a special appearance in the case, contesting jurisdiction by way of motions to dismiss. The trial court granted in part the motions to dismiss the amended complaint. The court concluded that the allegations in Count I arose out of Singer’s status as a shareholder of Unibilt, and therefore, the venue selection provision of the Settlement Agreement mandated that such litigation occur in Michigan. As to Count II, the court determined that there was insufficient evidence that the Williamsburg defendants were conducting business in the state of Florida when suit was filed; therefore, they did not have sufficient contacts with the state of Florida to justify general personal jurisdiction pursuant to section 48.193(2), Florida Statutes (2007).
 
 [1]
 

 As Count I was dismissed pursuant to a contractual venue provision, it presents a question of law for which the standard of review is
 
 de novo. Fuller v. Dura-Stress Underground, Inc.,
 
 939 So.2d 143, 144 (Fla. 5th DCA 2006). As Count II was dismissed for lack of personal jurisdiction, our standard of review is also
 
 de novo. Clement v. Lipson,
 
 999 So.2d 1072, 1074 (Fla. 5th DCA 2008).
 

 Count I — Breach of Settlement Agreement
 

 In the Settlement Agreement resolving the earlier litigation, Singer and
 
 *787
 
 the appellees contracted for various benefits to Singer, including a 25% share in Unibilt stock. Paragraph 2 of the Settlement Agreement provided Singer with “all rights as a Unibilt’s [sic] shareholder.” In pertinent part, Paragraph 3(c) provided that “any shareholder claims or actions Singer may have in his capacity as shareholder shall be brought only in the courts of the State of Michigan.” The Settlement Agreement also contained the following forum selection clause:
 

 12. The Court of the Ninth Judicial Circuit, Orange County, Florida, shall retain jurisdiction to enforce and interpret the terms of this agreement. This agreement shall be governed by and construed under the laws of the State of Florida, and the parties agree that in any action for enforcement of this agreement, venue shall be proper in Orange County, Florida, except that the parties agree that all cases and controversies concerning Singer’s rights as a shareholder of Unibilt shall be governed exclusively by the laws of the State of Michigan and that jurisdiction and venue over any action concerning Uni-bilt shares (other than the right of Singer to receive the shares as provided in Paragraph 2 of this agreement) shall be exclusively in Michigan.
 

 (Emphasis added).
 

 There is no dispute that Singer received the shares of Unibilt as provided in the Settlement Agreement. What he did not receive, according to him, was his proper share of proceeds from Unibilt’s subsequent sale of certain real estate. Singer became concerned upon receipt of a letter, dated March 23, 2006, from Unibilt’s Vice-President, Roger Zlotoff, itemizing his share of the profits from the sale of the property.
 

 Singer contends that his suit is properly filed in Orange County pursuant to Paragraph 12 of the Settlement Agreement because he seeks to enforce and interpret the terms of that agreement. We disagree that Count I seeks to enforce or interpret the Settlement Agreement; rather, it raises a case or controversy concerning Singer’s rights as a shareholder of Unibilt. Therefore, Count I is governed by the exception clause of Paragraph 12. Because the language is mandatory, not permissive, we find that the trial court correctly determined that the present dispute between Singer and Unibilt was required to be litigated in the state of Michigan.
 
 Travel Express Inv., Inc. v. AT & T Corp.,
 
 14 So.3d 1224 (Fla. 5th DCA 2009). Thus, the trial court’s dismissal of Count I against Unibilt on this basis was correct.
 

 Count II — Breach of Partnership Agreement
 

 Singer’s cause of action in Count II against the Williamsburg defendants also arises out of the aforementioned March 23, 2006, letter. Paragraph 4 of the letter states:
 

 4. Regarding distributions to limited partners of Williamsburg Developers, the attached schedules show that net funds available for distribution of $17,850,000 were not sufficient to repay partner loans and interest. Thus there were no distributions to any limited partners of Williamsburg Developers.
 

 Singer alleged in Count II that this paragraph evidences a breach of the Partnership Agreement. The trial court never reached the merits of this claim, finding instead that an absence of personal jurisdiction over the Williamsburg defendants precluded its consideration of the issue.
 

 There are two types of personal jurisdiction over nonresidents under Florida’s long-arm jurisdiction statute — specific personal jurisdiction and general personal jurisdiction. § 48.193(l)-(2), Fla. Stat. (2007). The trial court concluded that it lacked general personal jurisdiction over
 
 *788
 
 the Williamsburg defendants because they were not conducting substantial business activity within Florida at the time suit was filed and otherwise had insufficient contacts with the state. Section 48.193(2), Florida Statutes (2007), provides:
 

 (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of the state, whether or not the claim arises from that activity.
 

 This provision authorizes suits against nonresidents who engage in substantial activity in Florida, irrespective of whether the claim arises from the activity.
 
 Gadea v. Star Cruises, Ltd.,
 
 949 So.2d 1143, 1145 (Fla, 3d DCA 2007). The trial court determined that this section was not applicable because the Williamsburg defendants had ceased all activity in Florida by the time they were sued. In making its determination, the trial court relied upon
 
 Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Automotive Group, Inc.,
 
 987 So.2d 818 (Fla. 4th DCA 2008).
 

 In that case, Buckingham, Doolittte & Burroughs, LLP (“BDB”), a law firm, had represented Kar Kare Automotive Group, Inc. (“Kar Kare”), in a lawsuit in Florida against a former Kar Kare employee who had allegedly violated a non-compete agreement. After it lost the lawsuit, BDB sued Kar Kare in Florida to collect its fees. Curiously, BDB apparently did not assert specific jurisdiction under section 48.193(1), Florida Statutes. The appellate opinion, therefore, addressed only the assertion of general jurisdiction under section 48.193(2). Because Kar Kare had ceased doing business in Florida before the lawsuit was filed, the court held that general jurisdiction was lacking. Although it did not say so expressly, the
 
 Buckingham
 
 panel apparently adopted the same reasoning used in
 
 Arch Aluminum & Glass Co. v. Haney,
 
 964 So.2d 228 (Fla. 4th DCA 2007). There, another panel of the same court concluded that “is engaged in substantial ... activity,” in Florida’s long-arm jurisdiction statute means “currently” engaged.
 
 Id.
 
 at 237. It based this conclusion on the use of the present tense phrase, “is engaged.” We do not construe the statute this narrowly.
 

 Section 48.193(2) is the “functional equivalent” of the constitutional “continuous and systematic” standard for general jurisdiction.
 
 Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,
 
 447 F.3d 1357, 1363 n. 7 (11th Cir.2006);
 
 Woods v. Nova Cos. Belize Ltd.,
 
 739 So.2d 617, 620 (Fla. 4th DCA 1999). The application of this standard necessarily involves the scrutiny of the activities of the nonresident over some period of time prior to the filing of the complaint. The duration of this period is not subject to specific delineation.
 
 See Woods,
 
 739 So.2d at 620-21 (contacts assessed over period of years prior to filing complaint);
 
 Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
 
 84 F.3d 560 (2d Cir.1996) (contacts viewed for reasonable time prior to filing complaint). It depends upon such factors as the nature and intensity of the activity. The ultimate consideration is whether the nonresident’s contacts are sufficient so that the exercise of jurisdiction comports with traditional notions of fairness.
 
 Helicopteros Nacionales de Colom., S.A. v. Hall,
 
 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).
 

 Turning to the specific language of section 48.193(2), our sister court construed the phrase “is engaged” to mean is engaged “at the time suit [is] filed.”
 
 Buckingham,
 
 987 So.2d at 822. The problem with this interpretation is that it focuses on a temporal event that has no relevance to the constitutional standard with which it is said to be equivalent.
 
 See Woods,
 
 739 So.2d at 620 (statutory “substantial activity” means same as constitutional “continuous and systematic” activi
 
 *789
 
 ty). For the activity to be substantial,” it must involve a wider temporal window. Thus, at a minimum, “is engaged” must be interpreted to also involve past activities. We conclude that a better interpretation focuses on the activities of the nonresident during a reasonable period of time prior to filing the complaint, but not necessarily up until the complaint is filed. When the activities of the nonresident are of sufficient quality that it should in fairness expect to defend itself here, it should not make a difference that it happens to cease these activities prior to the filing of the complaint, especially where the activities occur close in time to the events giving rise to the cause of action.
 

 Here, Williamsburg Developers was established for the express purpose of developing a residential subdivision in Orange County, Florida. It conducted these activities for two decades in Florida with Singer as its resident partner. Virtually all of its business activities took place in Florida. It had a registered agent in the state until shortly before this suit was filed and had engaged in considerable litigation in the courts of this state. The alleged breach of contract, although technically not arising from these activities, occurred contemporaneously with the Williamsburg defendants’ liquidation and exodus from Florida and involved a contractual relationship with the partnership’s resident agent. Under these circumstances, we find that there exists both statutory and constitutional authority to require the Williams-burg defendants to defend themselves in Florida.
 

 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 

 MONACO, C.J., and TORPY, J. concur.
 

 [1]
 

 . Singer appealed this order, but because the order was nonfinal, this Court relinquished jurisdiction to allow the trial court to issue a final order. The resulting final order dismissing the case is the subject of the present appeal.